UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:23-cr-00171-JPH-TAB |
| ) | |
| MATTHEW BALLMAN, ) | -10 |
| ) | |
| Defendant. ) | |

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT**

Defendant Matthew Ballman is charged with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Mr. Ballman has filed a motion to dismiss the indictment, arguing that § 922(g)(1) violates the Second Amendment both on its face and as applied to him. Dkt. [476]. For the reasons below, that motion is **DENIED**.

## I.
## Facts and Background

When evaluating a motion to dismiss an indictment, the Court assumes that the indictment's factual allegations are true and "view[s] all facts in the light most favorable to the government on a motion to dismiss." *United States v. Yashar*, 166 F.3d 873, 880 (7th Cir. 1999).

Mr. Ballman is indicted in the Second Superseding Indictment on one count of unlawful possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Dkt. 352 at 9; *see* dkt. 472. That charge alleges that Mr. Ballman has one prior state felony conviction from 2012 for Possession of Cocaine/Methamphetamine or Schedule I or II Narcotic Drug. Dkt. 352 at 9.

1

Mr. Ballman has filed a motion to dismiss that count of the Second Superseding Indictment.  Dkt. 476.

## II.
## Motion to Dismiss Standard

Under Federal Rule of Criminal Procedure 12, a defendant may challenge the sufficiency of an indictment "without a trial on the merits" by arguing that the indictment fails to state an offense.  Fed. R. Crim. P. 12(b)(1), (b)(3)(B)(v).  On a motion to dismiss, "[a]n indictment is reviewed on its face, regardless of the strength or weakness of the government's case."  *United States v. White*, 610 F.3d 956, 958 (7th Cir. 2010).  "One basis for a Rule 12(b)(3)(B) motion to dismiss is that the charged offense is based on an unconstitutional statute."  *United States v. Polk*, No. 1:23-cr-00166-JMS-TAB, 2024 WL 4216039, at *1 (S.D. Ind. Sept. 17, 2024).

## III.
## Analysis

### A. The Second Amendment

"A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. amend. II.  "[W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct."[1]

---

[1] Initially, Mr. Ballman and the government dispute whether "the people" in Second Amendment's plain text includes those prohibited from possessing a firearm under § 922(g)(1).  *Compare* dkt. 477 at 6–8, *with* dkt. 498 at 10–11.  Neither the Supreme Court nor the Seventh Circuit have addressed this question squarely.  In resolving Mr. Ballman's motion, the Court assumes without deciding that the Second Amendment's plain text does not prevent its application here.

2

*N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 17 (2022). So, to justify a restriction on that conduct, "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* In other words, the government "must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds" of the Second Amendment. *Id.* at 19.

When confronted with a regulation that would have been "unimaginable at the founding," courts must compare that regulation to "relevantly similar" historical regulations to determine whether the modern regulation at issue is "consistent with the Second Amendment's text and historical understanding." *Id.* at 26–27. A modern regulation is "relevantly similar" to a historical one when it imposes a "comparable burden on the right of armed self-defense," as measured by "*how* and *why*" those regulations burden the right. *Id.* at 29 (emphasis added).

Most recently, the Supreme Court in *United States v. Rahimi* stated that courts must evaluate whether a challenged modern regulation is "'relevantly similar' to laws that our tradition understood to permit" to determine "whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." 144 S. Ct. 1889, 1898 (2024) (quoting *Bruen*, 597 U.S. at 29). Firearm regulations therefore are not "trapped in amber," so even if "a challenged regulation does not precisely match its historical precursors, 'it may still be analogous enough to pass constitutional muster.'" *Id.* (quoting *Bruen*, 597 U.S. at 30). In other words, a modern regulation must "comport with the

3

principles underlying the Second Amendment, but it need not be a 'dead ringer' or a 'historical twin'" with a historical analogue. *Id.*

### B. Facial challenge to § 922(g)(1)

The statute prohibiting possession of a firearm by a convicted felon provides, in relevant part:

> It shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1). Mr. Ballman argues that this provision is facially unconstitutional because there is no tradition in this country "of restricting people with felonies from possessing firearms," even people "feared to be dangerous." Dkt. 477 at 2. He contends that the government cannot point to a sufficiently similar historical analogue that suggests felons could be permanently disarmed like they are under § 922(g)(1). *Id.* at 11–23. The government responds that § 922(g)(1) is constitutional on its face because disarming "dangerous" individuals—like felons—is consistent with the country's history of firearms regulations. Dkt. 498 at 23.

To defeat Mr. Ballman's facial challenge, the government "need only demonstrate that" § 922(g)(1) is "constitutional in some of its applications." *Rahimi*, 144 S. Ct. at 1898. To determine whether § 922(g)(1) passes this test, this Court looks to Supreme Court cases involving challenges to other firearms regulations.

To start, the Supreme Court in *Rahimi* reiterated that prohibitions "on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'" *Id.* at 1902 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626, 627 n.26 (2008)); *see McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) ("We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons' . . . . We repeat those assurances here." (quoting *Heller*, 554 U.S. at 626–27)); *cf. Bruen*, 597 U.S. at 21 (reiterating the *Heller* Court's recognition that "[l]ike most rights, the right secured by the Second Amendment is not unlimited." (citing *Heller*, 554 U.S. at 626)). These cases do not suggest or hint that the Supreme Court will find § 922(g)(1) unconstitutional. On the contrary, the Supreme Court has consistently expressed the view that prohibiting felons from possessing firearms is "presumptively lawful." *Heller*, 554 U.S. at 626, 627 n.26.

Nonetheless, the Supreme Court has not directly decided the constitutionality of § 922(g)(1). *See United States v. Jackson*, 110 F.4th 1120, 1129 (8th Cir. 2024) ("We think it more likely that the Court presumed that the regulations [including § 922(g)(1)] are constitutional because they are constitutional, but termed the conclusion presumptive because the specific regulations were not at issue in *Heller*."). So here, this Court looks to *Bruen* and *Rahimi* to determine whether § 922(g)(1) comports with our country's tradition of firearm regulation.

5

In *Rahimi*, the Supreme Court upheld the constitutionality of § 922(g)(8), which prohibits individuals subject to a domestic violence restraining order from possessing a firearm. 144 S. Ct. at 1894. Importantly, § 922(g)(8) applies only after a finding that the individual "represents a credible threat to the physical safety" of an intimate partner or child. *Id.* (quoting § 922(g)(8)). In rejecting a facial challenge to § 922(g)(8), the Supreme Court recognized that our country's "tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others." *Id.* at 1902–03.

Two historical analogues supported that conclusion. The first was surety laws, which provided a mechanism for magistrates "to require individuals suspected of future misbehavior," including misuse of firearms, "to post a bond," facing forfeiture of the bond if the misbehavior did in fact occur. *Id.* at 1899–1900. And the second was "going armed" laws, which "provided a mechanism for punishing those who had menaced others with firearms." *Id.* at 1900. Although § 922(g)(8) is "by no means identical to these founding era regimes," it didn't "need to be." *Id.* at 1901. That is because the statute is "'relevantly similar' to those founding era regimes in both why and how it burdens the Second Amendment right." *Id.* (quoting *Bruen*, 597 U.S. at 29).

The Supreme Court therefore found that § 922(g)(8) "restricts gun use to mitigate demonstrated threats of physical violence, just as the surety and going armed laws do." *Id.* This did not mean that a defendant could be disarmed "simply because he is not 'responsible'"—the Supreme Court rejected this

6

argument from the government. *Id.* at 1903. Rather, the throughline of *Rahimi*'s historical analysis is that "our Nation's tradition of firearm regulation distinguishes citizens who have been found to pose a credible threat to the physical safety of others from those who have not." *Id.* at 1902. Under *Rahimi*, felons "who have been found to pose a credible threat to the physical safety of others" may be disarmed. *Id.* at 1902.

Other courts addressing the question have held that this reasoning applies with equal force to § 922(g)(1). *See, e.g., United States v. Lee*, No. 1:23-cr-00103-JRS-MJD, dkt. 92 at 9 (S.D. Ind. July 9, 2024) ("If, as *Rahimi* holds, the government can disarm individuals who threaten others' safety, and felons are deemed threatening, as the fact of § 922(g)(1)'s passage implies, then there is no constitutional problem with the law—it is consistent with 'tradition.'"); *United States v. Williams*, 113 F.4th 637, 663 (6th Cir. 2024) (upholding § 922(g)(1) under *Rahimi* because "[t]he history reveals that legislatures may disarm groups of people, like felons, whom the legislature believes to be dangerous—so long as each member of that disarmed group has an opportunity to make an individualized showing that he himself is not actually dangerous"). So, under *Rahimi*'s reasoning, § 922(g)(1) is constitutional when applied to felons "who have been found to pose a credible threat to the physical safety of others." *Rahimi*, 144 S. Ct. at 1902. That is enough to defeat a facial challenge because the government "need only demonstrate" that § 922(g)(1) "is constitutional in some of its applications." *Id.* at 1898.

Last, Mr. Ballman argues that § 922(g)(1) is facially unconstitutional because history at best supports only temporary disarmament of felons—not permanent disarmament like under § 922(g)(1). *See* dkt. 477 at 15, 28. The Supreme Court in *Rahimi* noted approvingly that, like the historical analogue of "surety bonds of limited duration, Section 922(g)(8)'s restriction was temporary as applied to Rahimi" because it only applied to him while he was subject to a restraining order. 144 S. Ct. at 1902; *see also id.* at 1909–10 (Gorsuch, J., concurring) ("We do not resolve whether the government may disarm an individual permanently."). Here, the same statutory framework that prohibits convicted felons from possessing firearms provides multiple ways by which such persons may regain the right to possess firearms and no longer be subject to § 922(g)(1)'s prohibition. *See* 18 U.S.C. § 921(a)(20) ("Any conviction [for purposes of disarmament under § 922(g)(1)] which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms."); *see also United States v. Vaughns*, No. 22-cr-00636, 2023 WL 8258575, at *7 (N.D. Ill. Nov. 29, 2023) (individuals subject to § 922(g)(1) may "seek administrative relief and regain their right to bear arms"); *Polk*, 2024 WL 4216039, at *5.

So, under § 922(g)(1)'s statutory scheme, there are at least some convicted felons who may have their right to possess a firearm restored. Section 922(g)(1) therefore is not the permanent, unchallengeable disarmament

that *Rahimi* did not address. Under *Rahimi*, § 922(g)(1)'s prohibition on the possession of firearms by convicted felons is constitutional because it accords with our country's tradition of temporarily disarming people who pose a credible threat to others' physical safety. *See* 144 S. Ct. at 1902. That is enough to defeat a facial challenge on this argument. *Id.* at 1898.

In sum, to prevail on the facial challenge under *Rahimi*, the government "need only demonstrate" that § 922(g)(1) "is constitutional in some of its applications." *Id.* And under *Rahimi*'s reasoning, § 922(g)(1) is constitutional when applied to felons "who have been found to pose a credible threat to the physical safety of others." *Id.* at 1902. That narrow application is enough for § 922(g)(1) to survive Mr. Ballman's facial challenge.

### C. As-applied challenge to § 922(g)(1)

Mr. Ballman also argues that § 922(g)(1) is unconstitutional as applied to him. Dkt. 477 at 26–28.[2] The parties address this as-applied challenge based on the category of Mr. Ballman's predicate felony conviction—possession of a controlled substance—rather than Mr. Ballman's individual characteristics or criminal history. *See* dkt. 498 at 25–28; dkt. 501 at 3 (Mr. Ballman's reply brief agreeing that "the as-applied challenge Mr. Ballman makes does not require a review of the facts surrounding the underlying conviction" but instead

---

[2] The government briefly argues that an as-applied analysis is unnecessary because the Second Amendment allows the prohibition of all felons from possessing firearms. Dkt. 498 at 28. The Court, however, addresses Mr. Ballman's narrower as-applied challenge instead of deciding whether § 922(g)(1) is constitutional in all its potential applications. *See United States v. Gay*, 98 F.4th 843, 846 (7th Cir. 2024) ("assum[ing] for the sake of argument that there is *some* room for as-applied challenges" to § 922(g)(1)); *Rahimi*, 144 S. Ct. at 1903 (deciding an as-applied challenge to § 922(g)(8)).

9

turns on the category of that conviction).³  While the Supreme Court and Seventh Circuit have not expressly adopted this categorical approach, their precedent supports it.  *See Rahimi*, 144 S. Ct. at 1903 (rejecting an as-applied challenge and holding that categorically "[a]n individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment"); *Gay*, 98 F.4th at 847 (concluding that categorically "parolees lack the same armament rights as free persons"); *accord Kanter v. Barr*, 919 F.3d 437, 454, 464 (7th Cir. 2019) (Barrett, J., dissenting) ("[T]he legislature can impose some categorical bans on the possession of firearms.").⁴

Under that approach, Mr. Ballman argues that it violates the Second Amendment to prohibit the possession of firearms based on a predicate felony conviction for possession of a controlled substance.  Dkt. 477 at 26–28.  He contends that possession of a controlled substance is a nonviolent felony "that did not even exist before and during the founding of the country." *Id.*  The government responds that drug crimes and dangerous behavior are connected,

---

³ While Mr. Ballman's predicate felony conviction was reduced to a misdemeanor after the conduct charged in this case, dkt. 501-2, he does not explain how that could affect the Second Amendment analysis under this agreed categorical approach.  *See* dkt. 501.  The Court therefore does not consider that individualized fact.  *Cf. United States v. Thompson*, 901 F.3d 785, 787 (7th Cir. 2018) (a defendant's status at the time of the charged conduct is determinative).

⁴ To the extent the Second Amendment may later be held to require an individualized analysis, Mr. Ballman has waived such a challenge by adopting a categorical approach and by declining to tender facts necessary to carry his burden in an individualized analysis.  *See United States v. Williams*, 113 F.4th 637, 663 (6th Cir. 2024).

10

"supporting firearm restrictions for individuals with felony drug convictions." Dkt. 498 at 26.

The Supreme Court has found "ample [historical] evidence that the Second Amendment permits the disarmament of individuals who pose a credible threat to the physical safety of others." *Rahimi*, 144 S. Ct. at 1898. While *Rahimi* addressed judicial determinations of recent threats to others, *see id.* at 1901–02, other Courts have applied that historical evidence to § 922(g)(1), concluding that "certain classes of people posed a great risk of violence" and therefore "could be forbidden from owning firearms." *United States v. Williams*, 113 F.4th 637, 650 (6th Cir. 2024); *United States v. Jackson*, 110 F.4th 1120, 1128 (8th Cir. 2024) ("Legislatures historically prohibited [firearm] possession by categories of persons based on a conclusion that the category as a whole presented an unacceptable risk of danger if armed."); *accord Kanter*, 919 F.3d at 451 (Barrett, J., dissenting) ("History . . . support[s] the proposition that the state can take the right to bear arms away from a category of people that it deems dangerous.").

The question, then, is whether those convicted of a drug-possession felony constitute a dangerous class that may be prohibited from possessing a firearm. While drug possession is less severe than trafficking, both are connected to dangerousness. *See United States v. Bullock*, 632 F.3d 1004, 1016 (7th Cir. 2011) ("Drug crimes are associated with dangerous and violent behavior."); *United States v. Duran*, 407 F.3d 828, 841 (7th Cir. 2005) (noting Congress's work to "counter[ ] the dangerous mix of guns and drugs"); *see also*

11

*Williams*, 113 F.4th at 659 ("Drug trafficking is a serious offense that, in itself, poses a danger to the community" and "often leads to violence."). Indeed, Congress made such a finding in enacting § 922. *Omnibus Crime Control and Safe Streets Act of 1968*, P.L. 90-351, § 901(a)(2) ("The Congress hereby finds and declares . . . that the ease with which any person can acquire firearms other than a rifle or shotgun . . . including narcotics addicts . . . is a significant factor in the prevalence of lawlessness and violent crime in the United States.").

Moreover, § 922 also includes Congress's decision to prohibit "any person . . . who is an unlawful user of or addicted to any controlled substance" from possessing a firearm. 18 U.S.C. § 922(g)(3). That provision reflects "the connection between drug use and violent crime," supporting the constitutionality of § 922(g)(1) as applied here. *United States v. Yancey*, 621 F.3d 681, 686 (7th Cir. 2010) (cited favorably in *Kanter*, 919 F.3d at 466 (Barrett, J., dissenting)); *accord United States v. Likens*, 464 F.3d 823, 826 (8th Cir. 2006) (noting the shared goal of § 922(g)(1) and (g)(3) in keeping firearms from dangerous individuals).

In short, while the Supreme Court and Seventh Circuit have not directly addressed the question, their precedent indicates that the Second Amendment does not prohibit Congress from deciding that persons with prior convictions for drug-possession felonies may not possess firearms. Mr. Ballman's as-applied challenge is therefore denied.

# IV.
# Conclusion

Mr. Ballman's motion to dismiss the unlawful possession of a firearm charge in the Second Superseding Indictment is **DENIED**. Dkt. [476].

**SO ORDERED.**

Date: 1/29/2025

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel